# CASES

## ARGUED AND DETERMINED

### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

---

NORTHERN PAC. RY. CO. et al. v. PACIFIC COAST LUMBER MFRS.' ASS'N et al.

(Circuit Court of Appeals, Ninth Circuit. October 5, 1908.)

No. 1,520.

1. COURTS (§ 407*)—JURISDICTION OF CIRCUIT COURT OF APPEALS—INTERLOC-UTORY ORDERS.

Under section 7 of the act (Act March 3, 1891, c. 517, 26 Stat. 828 [U. S. Comp. St. 1901, p. 550]) creating the Circuit Courts of Appeals, as amended by Act April 14, 1906, c. 1627, 34 Stat. 116 (U. S. Comp. St. Supp. 1907, p. 209), which enlarges the jurisdiction of such courts to include appeals from interlocutory orders or decrees granting or continuing an injunction or appointing a receiver "in any cause," an appeal lies from such an order, although the sole question involved is the jurisdiction of the court making the same.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1100; Dec. Dig. § 407.*

Jurisdiction of Circuit Court of Appeals in general, see notes to Lau Ow Bew v. United States, 1 C. C. A. 6; United States Freehold Land & Emigration Co. v. Gallegos, 32 C. C. A. 475.]

2. COURTS (§ 407*)—CIRCUIT COURTS OF APPEALS—APPEALABLE ORDERS—OR-DERS GRANTING INJUNCTION—"UPON HEARING IN EQUITY."

An order of a Circuit Court granting a preliminary injunction made after the filing of a bill and on notice to the defendants, pursuant to which their counsel appeared specially to object to the jurisdiction, but were heard upon the merits as amici curiæ, was made "upon a hearing in equity" within the meaning of section 7 of the act (Act March 3, 1891, c. 517, 26 Stat. 828 [U. S. Comp. St. 1901, p. 550]) creating the Circuit Courts of Appeals as amended by Act April 14, 1906, c. 1627, 34 Stat. 116 (U. S. Comp. St. Supp. 1907, p. 209), and is appealable thereunder.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1100; Dec. Dig. § 407.*]

3. CARRIERS (§ 34*)—JURISDICTION OF FEDERAL COURTS—SUIT TO ENJOIN EN-FORCEMENT OF INTERSTATE RATES.

Under section 22 of the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 387 [U. S. Comp. St. 1901, p. 3170]), which expressly pre-serves all legal remedies, a Circuit Court of the United States has juris-diction of a suit to enjoin railroad companies from filing or enforcing a

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

165 F.—1

proposed new schedule of rates alleged to be unjust and unreasonable pending a determination of their reasonableness by the Interstate Commerce Commission, where it is shown that their enforcement would result in irreparable injury to complainants.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 34.*]

4. COURTS (§ 289*)—JURISDICTION OF FEDERAL COURTS—SUITS ARISING UNDER INTERSTATE COMMERCE ACT.

The federal courts have exclusive jurisdiction of all suits arising under the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]) and its amendments.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 830; Dec. Dig. § 289.*]

5. COURTS (§ 271*)—FEDERAL COURTS—DISTRICT OF SUIT.

The provision of section 1 of the federal judiciary acts of 1887 and 1888 (Act March 3, 1887, c. 373, 24 Stat. 552 [U. S. Comp. St. 1901, p. 508], and Act Aug. 13, 1888, c. 866, 25 Stat. 433 [U. S. Comp. St. 1901, p. 508]) relating to the Circuit and District Courts, that "no suit shall be brought in either of said courts against any person by any original process or proceeding in any other district than that whereof he is an inhabitant," does not apply to suits of which such courts are given exclusive jurisdiction; and a suit to enjoin railroad companies from establishing and enforcing unreasonable rates in violation of the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]) is of such character and may be maintained in any district in which the defendants can be found.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 810; Dec. Dig. § 271.*]

6. COURTS (§ 328*)—JURISDICTION OF FEDERAL COURTS—"MATTER IN DISPUTE."

In a suit to enjoin railroad companies from establishing a new schedule of rates, the matter in dispute is the right of the defendants to enforce such proposed rates, and, where the value of such right exceeds $2,000, a federal court has jurisdiction.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 890–896; Dec. Dig. § 328.*

For other definitions, see Words and Phrases, vol. 5, pp. 4414, 4415; vol. 8, p. 7718.

Jurisdiction of Circuit Courts as determined by the amount in controversy, see notes to Auer v. Lombard, 19 C. C. A. 75; Tennent-Stribling Shoe Co. v. Roper, 36 C. C. A. 459.]

Appeal from the Circuit Court of the United States for the Western District of Washington.

The appeal in this case is taken from a temporary injunction order made in a case in which the appellees herein, consisting of a number of corporations and persons engaged in the lumber and shingle business in the states of Washington and California, brought their bill against the Northern Pacific Railway, a corporation of the state of Wisconsin, the Great Northern Railway Company, a corporation of the state of Minnesota, the Chicago, Burlington & Quincy Railroad Company, a corporation of the state of Iowa, the Oregon Railroad & Navigation Company, a corporation of the state of Oregon, the Oregon Short Line Railroad Company and the Union Pacific Railroad Company, corporations of the state of Utah, each of which corporations, the bill alleged, was engaged in business within the district in which the suit was brought. The bill alleged in substance that the appellants are common carriers engaged in commerce between the states, and as such had the power, by concurrence of action, to absolutely fix and maintain rates on lumber and forest products from points within the state of Washington to eastern and southern destinations in other states; that the interests controlling the Great Northern Railway Company also dominate and control the Northern Pacific Railway Company, and that these two dominate and control the Chicago, Burling-

ton & Quincy Railroad Company through the ownership of its capital stock, so that there is no competition between said lines; that the Union Pacific Railroad Company dominates and controls the Oregon Railroad & Navigation Company and the Oregon Short Line Railroad Company by virtue of ownership of the stock of said two companies, so that there is no competition between said lines; that, in making freight rates from the Pacific Northwest to the East, all of said lines act in concert through the medium of the Transcontinental Freight Bureau; that the first group of railroad companies so mentioned are designated in the bill the "Hill Lines," and the second group, the "Harriman Lines"; that said corporations have filed with the Interstate Commerce Commission and have published, to take effect on November 1, 1907, a revised tariff of rates on lumber and other forest products from the state of Washington and other Northwestern points of origin to Eastern and Southeastern destinations in other states, whereby such rates are to be advanced 10 cents a hundred pounds to eastern destinations and 5 cents a hundred pounds to certain Southeastern destinations; that said rates will go into effect on November 1, 1907, unless restrained by the court; that in promulgating said tariff the said railroad companies have combined, conspired, and agreed to enormously advance the rates, and that such advance is made in restraint of interstate trade and in violation of the act of Congress of July 2, 1890, c. 647, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3200), known as the "Sherman Anti-Trust Act," and of acts amendatory thereof; that said increase in rates is unjust, unreasonable, and in violation of section 1 of the act of Congress of February 4, 1887, c. 104, 24 Stat. 379 (U. S. Comp. St. 1901, p. 3154), known as the "Act to regulate commerce," and the acts amendatory thereof; that the Great Northern Railway Company and the Northern Pacific Railway Company, in connection with other participating carriers, have filed with the Interstate Commerce Commission, to take effect November 1, 1907, a revised tariff of rates on lumber and other forest products from the state of Washington and other Northwestern points of origin, to Porthill, Idaho, and to Gateway, Sweet Grass, and Butte, Mont., and intermediate points, and to Sherwood, Crosby, Maxbass, Antler, Bunseith, St. John, Hansboro, Sarles, Hanna, Wallah́lo, Neche, Ojata, Argusville, Colfax, and Hankinson, N. D., and intermediate points, whereby the prevailing rates are to be greatly advanced; that such rates will go into effect unless restrained by the order of the court; that said advances in rates are unjust, unreasonable, and arbitrary, and in violation of the Sherman anti-trust act, and of the act to regulate commerce. The bill charges, upon information and belief, that an agreement and understanding exists between the Hill lines and the Harriman lines, whereby the Northwest Pacific Coast territory is parceled between them for transportation purposes, and that, in pursuance of such agreement and understanding, neither will invade the territory of the other; that upon shipments of lumber originating in the territory of the one, to be transported over the lines of the other, a large if not prohibitive differential in rates is exacted, so that practically each dominates the transportation from points within its own territory, and names the rate to be exacted therefrom; that the advance in rates announced to become effective on November 1, 1907, was brought about by agreements and understandings between said Hill and Harriman lines in suppression of competition and for their mutual advantage, without regard to the rights and interests of the public; that the appellees and others engaged in the lumber business in the state of Washington have invested in plant, machinery, equipment, and appurtenances $100,000,000, not including the value of the material on hand, logs, standing timber or timber lands, and that more than 90,000 persons are directly engaged in said industry, the annual pay roll whereof exceeds $60,000,000, and that approximately 200,000 people are directly dependent upon said industry; that the annual output of lumber exceeds $65,000,000, and the annual output of shingles exceeds $17,000,000; that the freight paid annually on shipments from the points in the state of Washington to be transported to other states approximates $25,000,000; that a large part of such investment in the lumber industry was made upon faith that the existing rates of freight to the consuming     rkets would not be increased, but rather decreased, and the appellees alle... on information and belief that the rates generally in the United States on the average of all traffic have been

reduced 20 per cent. in the last 20 years, and allege that the existing rates on lumber were voluntarily established by the carriers in the year 1893, and ever since have been continuously in effect. The bill sets up the present tariff as it has existed for 14 years, and alleges that under such rates it is difficult for the lumber manufacturers of Washington to compete in the markets with similar products, and that only in the highest grades on the market, under said rates, can they move their product to consuming territories in other states. The bill alleges that not only are the existing rates greater than a large part of the traffic can bear, but that under said rates the appellants have greatly prospered. The bill then sets forth in detail the proportion of tonnage of forest products carried to other products carried by said railroad companies under the present rate, and alleges that dividends have been paid by said companies in addition to operating expenses, fixed charges, a large amount of interest on bonds and indebtedness, and large expenditures for improvements, and that the tonnage on forest products constitute 17.33 per cent. of their entire tonnage, and has paid 27.80 per cent. of the entire gross earnings of the Great Northern Railway Company; that the proposed advance in rates will greatly injure, and to a large extent destroy, the lumber industry in the state of Washington, and will work irreparable injury to the appellees and others engaged in the business in that state and in the Northwest Pacific Coast, as well as cause serious detriment to the public interests; that the advance will amount to $48 a car on lumber and $36 a car on shingles to St. Paul, Denver, Chicago, and other Eastern markets, which is excessive, unreasonable, and unjust, and more than the traffic can bear; that the proposed advanced rates will force the mills to shut down; that the appellees have no remedy at law; that the Interstate Commerce Commission has no jurisdiction to afford relief in the premises until after the threatened advance in rates shall have gone into effect, and the reasonableness thereof shall have been investigated and determined by said commission, and that in the meantime the advance in rates would drive the appellees out of competing markets, disrupt the established trade regulations of the appellees, and force them to shut down their lumber mills or to make enormous sacrifices in the disposition of their product, which injury is irreparable, and incapable of pecuniary estimation.

The bill was filed on October 1, 1907. On October 31, the Circuit Court made an order holding in abeyance certain motions and pleas to the jurisdiction of the court over the parties defendant, and enjoining the appellants, until the further order of the court, from putting into effect the advanced rates or any rates in advance of the present established rates, and directing that the appellees execute to the appellants a bond with good and sufficient sureties in the sum of $250,000 to indemnify them from loss, cost, and damages by reason of the injunction, in case said advance in rates should finally be held to be reasonable, or in case rates in excess of the existing tariff should be established by the Interstate Commerce Commission.

James B. Kerr and W. W. Cotton, for appellants.
Wimbish, Watkins & Ellis and Austin E. Griffiths, for appellees.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). The appellees moved to dismiss the appeal on the grounds, first, that jurisdictional questions only are presented, and that therefore, if the order is appealable, the appeal lies to the Supreme Court alone; and second, that the order appealed from was made ex parte and not upon "a hearing in equity," and is therefore not appealable. To the first ground of the motion, the answer is that by the act of April 14, 1906, c. 1627, 34 Stat. 116 (U. S. Comp. St. Supp. 1907, p. 209), amending the seventh section of the act of March 3, 1891, c. 517, 26 Stat. 828 (U. S. Comp. St. 1901, p. 550), to establish the Circuit Courts of Appeals, appellate jurisdiction is given to this court from an interlocutory or-

der or decree granting or continuing an injunction or appointing a receiver "in any cause," whereas before such amendment the law had permitted such an appeal only in "a cause in which an appeal from a final decree may be taken under the provisions of said act to the Circuit Court of Appeals." The amendment enlarges the right of appeal from such interlocutory orders and extends it to "any cause," causes in which the jurisdiction of the court is the sole question involved, as well as other causes. Grainger v. Douglas Park Jockey Club, 148 Fed. 513, 78 C. C. A. 199.

Nor is the appeal subject to dismissal on the ground that the order appealed from was not had upon a "hearing in equity." After the bill had been filed, the court, on October 1, 1907, issued an order upon the defendants therein to show cause on October 29th why the injunction should not issue as prayed for, and directed that a copy of the bill and of the order be served upon each of the defendants in the suit at least five days before the day so "set for the hearing." The injunction order made on October 31st recites that the cause came on to be heard, pursuant to said rule to show cause, that the complainants appeared by their counsel, that the defendants appeared specially by counsel to move for the dismissal of the bill on the ground that they were corporations foreign to the state of Washington, and were entitled to be sued only in the Circuit Court of the United States for the district of which they were respectively inhabitants, and that they also appeared specially to file pleas to the same effect. It recites further that the court heard arguments upon the complainant's application for an injunction, and arguments of the counsel for the defendants as amici curiæ. This sufficiently shows that there was "a hearing in equity," such as the act of April 14, 1906, contemplates. The defendants to the bill each had notice and opportunity to appear and present all objections to the issuance of the injunction order, and we may assume that their counsel as amici curiæ did present every available objection. This view of the statute is in harmony with our decision in Pacific Northwest Packing Co. v. Allen, 109 Fed. 515, 48 C. C. A. 521. The motion to dismiss will be denied.

Had the Circuit Court jurisdiction of the subject-matter of the suit? The Constitution declares that the judicial power of the United States shall extend to all cases in law and equity arising under the Constitution and the laws of the United States. By the terms of section 22 of the Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 387 [U. S. Comp. St. 1901, p. 3170]), existing legal remedies were expressly preserved. Prior to its enactment, the equitable jurisdiction to enjoin excessive charges and discriminations by common carriers on the ground that the wrong was a constantly recurring one, for which there was no adequate remedy at law, was generally recognized. High on Injunctions, § 616; Menacho v. Ward (C. C.) 27 Fed. 529; Southern Express Co. v. Memphis, etc., Ry. Co. (C. C.) 8 Fed. 799; Coe v. Louisville & Nashville R. Co. (C. C.) 3 Fed. 775; Vincent v. Chicago & A. R. Co., 49 Ill. 33; American Coal Co. v. Consolidation Coal Co., 46 Md. 15; Rogers L. & M. Works v. Erie Ry. Co., 20 N. J. Eq. 379. The question here is whether by implication the equitable remedy is, by the interstate commerce act, held in abeyance and post-

poned until after the proposed future rate shall have gone into effect, and the Interstate Commerce Commission shall have passed upon the question of its reasonableness. The appellants claim that such is the purport of the decision in Texas & Pac. Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553. In that case it was held that a shipper cannot maintain an action at common law in a state court to recover damages by reason of excessive and unreasonable freight rates exacted on interstate shipments, where the rates charged were those which had been duly fixed by the carrier under the provisions of the act, and had not been found to be unreasonable by the Interstate Commerce Commission, and that the commission was intended to afford an effective and comprehensive means for redress of all wrongs resulting from unjust discriminations and undue preferences. In the course of the opinion, the court, after pointing out the fact that the judgment of a court based on a complaint by a shipper without previous action by the commission would give rise to a change of the schedule rate and result in the destruction of the act and the remedial provisions which it afforded, said:

"For if, without previous action by the commission, power might be exerted by courts and juries generally to determine the reasonableness of an established rate, it would follow that, unless all courts reached an identical conclusion, a uniform standard of rates in the future would be impossible, as the standard would fluctuate and vary, dependent upon the divergent conclusions reached as to reasonableness by the various courts called upon to consider the subject as an original question. Indeed the recognition of such a right is wholly inconsistent with the administrative power conferred upon the commission, and with the duty, which the statute casts upon that body, of seeing to it that the statutory requirement as to uniformity and equality of rates is observed. Equally obvious is it that the existence of such a power in the courts, independent of prior action by the commission, would lead to favoritism, to the enforcement of one rate in one jurisdiction and a different one in another, would destroy the prohibitions against preferences and discrimination, and afford, moreover, a ready means by which, through collusive proceedings, the wrongs which the statute was intended to remedy could be successfully inflicted. Indeed no reason can be perceived for the enactment of the provision endowing the administrative tribunal, which the act created, with power, on due proof, not only to award reparation to a particular shipper, but to command the carrier to desist from violation of the act in the future, thus compelling the alteration of the old or the filing of a new schedule, conformably to the action of the commission, if the power was left in courts to grant relief on complaint of any shipper, upon the theory that the established rate could be disregarded and be treated as unreasonable, without reference to previous action by the commission in the premises. This must be, because, if the power existed in both courts and the commission to originally hear complaints on this subject, there might be a divergence between the action of the commission and the decision of a court. In other words, the established schedule might be found reasonable by the commission in the first instance and unreasonable by a court acting originally, and thus a conflict would arise which would render the enforcement of the act impossible."

The decision leaves untouched the question whether or not a shipper may, since the passage of the act to regulate commerce, resort to equity to enjoin the promulgation of a new schedule of rates which are alleged to be unreasonable, extortionate, and ruinous to the shipper's business. That this is so is expressly recognized by the subsequent decision of the court in Southern Railway Co. v. Tift, 206 U. S. 428, 27 Sup. Ct. 709, 51 L. Ed. 1061. In that case the court had under review a de-

cision of the Circuit Court of Appeals for the Fifth Circuit, affirming the decree of the Circuit Court for the Southern District of Georgia in Tift et al. v. Southern Railway et al. (C. C.) 123 Fed. 789, 138 Fed. 753. An original bill had been filed by Tift and others to enjoin an advance in freight rates which was to be made effective shortly thereafter. A temporary restraining order was issued. It was subsequently dissolved, however, and the court, while sustaining its jurisdiction to entertain the bill, ruled that in case the rate complained of should be enforced, and the complainants should make application to the Interstate Commerce Commission to redress their alleged grievances, the court would thereafter entertain a renewed application on the record so made, and such appropriate additions thereto as might be proposed by either party, that the enforcement of such rates be enjoined pending the investigation of the commission unless otherwise ordered, and that, on presentation to the court of the report of the commission, such further action might be taken as would be conformable to law and the principles of equity. The complainants thereupon filed their petition before the Interstate Commerce Commission, and, upon the issues framed in answer thereto and the testimony adduced, the commission found that the advance in rates was not warranted and was unreasonable and unjust. Thereafter the complainants presented a petition to the Circuit Court stating the substance of the findings of the commission, and presenting a copy of its report and opinion. The defendants answered the petition, and the complainant filed also a supplemental bill to obtain restitution of the excess of rates charged over those which it was alleged were reasonable. It was stipulated by counsel for the respective parties that the testimony taken before the Interstate Commerce Commission be filed in the case subject only to objections to its relevancy. Other testimony was taken, and the Circuit Court decreed that the advance in rates was excessive, unreasonable, and unjust, and in violation of the provisions of the act to regulate commerce, and enjoined the defendants from enforcing the same. It will be seen that, while that case in its beginning was parallel with the case at bar, it became in its progress essentially variant therefrom in that it was finally heard and decided upon a petition presented to the court after the Interstate Commerce Commission had acted upon the question of the reasonableness of the advanced rates. In the Supreme Court, however, the appellants, who were the defendants in the court below, renewed the objections which they had urged to the jurisdiction of the Circuit Court to entertain the original bill for the injunction. As to those objections, the Supreme Court said:

"In the case at bar, however, there are assignments of error based on the objections to the jurisdiction of the Circuit Court. These might present serious questions in view of our decisions in Texas & Pacific Railroad Company v. Abilene Cotton Oil Company, 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, upon a different record than that before us. We are not required to say, however, that, because an action at law for damages to recover unreasonable rates which have been exacted in accordance with the schedule of rates as filed is forbidden by the interstate commerce act, a suit in equity is also forbidden to prevent a filing or enforcement of unreasonable rates or a change to unjust or unreasonable rates. The Circuit Court granted no relief prejudicial to appellants on the original bill. It sent the parties to the Interstate Commerce Commission, where, upon sufficient pleadings identical with those be-

fore the court, and upon testimony adduced upon the issues made, the decision was adverse to the appellants. This action of the commission, with its findings and conclusions, was presented to the Circuit Court, and it was upon these in effect the decree of the court was rendered."

This language of the opinion must be deemed to have been used advisedly and with the approval of all the members of the court who participated in the decision. Evidently its purpose was to make it clear that the question of the jurisdiction of a Circuit Court to entertain such a bill as is here before us was not presented and had not been adjudicated in the Abilene Cotton Oil Company Case, and that its decision was not deemed essential to the disposition of the case then before the court. So far as the Supreme Court is concerned, therefore, the question now under consideration is an open one.

Upon a careful consideration of the interstate commerce act, we find no ground on which to say that it impliedly denies the equitable jurisdiction to enjoin a threatened injury such as is alleged in the bill in the present case. It is true that the courts have no power to pronounce an interstate rate unreasonable or to declare what is a reasonable rate, but this is not to say that a court of equity may not enjoin the enforcement of a threatened ruinous schedule of rates which is proposed to be adopted in the future. If such is the effect of the act, we have the anomalous situation of a threatened irreparable injury for which there is no remedy, for the Interstate Commerce Commission has no power to enjoin a proposed unreasonable new schedule of rates. Interstate Commerce Commission v. Railway Co., 167 U. S. 479, 17 Sup. Ct. 896, 42 L. Ed. 243. To what does the reservation of legal remedies in section 22 of the act refer if not to such a remedy as this? The case calls for the exercise of a power which is inherent in a court of chancery, the power to enjoin a proposed unlawful act. The exercise of that power does not invade the province of the Interstate Commerce Commission. It prohibits the enforcement of an alleged unreasonable rate only until the commission shall have had time and opportunity to adjudge the question of its unreasonableness. To afford such relief is not to fix rates or to change existing rates, or to decide on the reasonableness of established rates, or in any way to interfere with the functions of the Interstate Commerce Commission, nor does it result in the confusion or derangement of rates so forcibly pointed out as the ground of decision in the Abilene Cotton Oil Case. Such has been the decision of the federal courts in every case in which the question has arisen. Tift v. Southern Ry. Co. (C. C.) 123 Fed. 789; Jewett Bros. & Jewett v. Chicago, M. & St. P. Ry. Co. (C. C.) 156 Fed. 160; M. C. Kiser Co. v. Central of Georgia Ry. Co. (C. C.) 158 Fed. 193.

Further objection to the jurisdiction is presented in the argument that to afford the relief granted the appellees herein is to make discriminatory rates, since the court can act only as between the parties to the suit, and the result of its successful termination would be to give the appellees better rates than others similarly situated. The answer to this is that all persons subject to the payment of the advanced rate may, if they choose, obtain the benefits of the order by complying with its conditions. The injunction makes no discrimination. It sus-

pends the collection of the increased rate pending the decision of the question of its lawfulness, upon security that the carrier shall not suffer ultimate loss.

It is earnestly insisted that the court below had no jurisdiction of the defendant corporations which were not inhabitants of the district in which the suit was brought, for the reason that the judiciary acts of March 3, 1887 (Act March 3, 1887, c. 373, 24 Stat. 552 [U. S. Comp. St. 1901, p. 508]), and August 13, 1888 (Act August 13, 1888, c. 866, 25 Stat. 133 [U. S. Comp. St. 1901, p. 508]), provide that no civil suit shall be brought before either the Circuit Court or the District Court "against any person by any original process or proceeding in any other district than that whereof he is an inhabitant." The interstate commerce act was passed at a time when the judiciary act of 1875 (Act March 3, 1875, c. 137, 18 Stat. 470 [U. S. Comp. St. 1901, p. 508]), was in force. Under that act a cause cognizable in the federal courts could be brought against a defendant in any district wherein he might be found at the time of serving process. The acts of 1887 and 1888, being limited to actions of which there is concurrent jurisdiction in state courts, do not apply to an action in which the federal jurisdiction is exclusive. United States v. Mooney, 116 U. S. 104, 6 Sup. Ct. 304, 29 L. Ed. 550; Atkins v. Disintegrating Co., 18 Wall. 272, 21 L. Ed. 841; In re Hohorst, 150 U. S. 653, 14 Sup. Ct. 221, 37 L. Ed. 1211; United States v. Standard Oil Co. (C. C.) 152 Fed. 290; Southern Pac. Co. v. Earl, 82 Fed. 690, 27 C. C. A. 185; Westinghouse Air Brake Co. v. Great Northern Ry. Co., 88 Fed. 258, 31 C. C. A. 525. We have to inquire, therefore, whether the present suit is of a class of cases of which the state courts would have concurrent jurisdiction. The case is clearly one which presents a federal question. It arises under the Constitution and laws of the United States. Its purpose is to compel compliance with the provisions of the interstate commerce act, and its correct decision depends upon the construction of that act. In re Lennon, 166 U. S. 548, 17 Sup. Ct. 658, 41 L. Ed. 1110; Toledo, A. A. & M. Ry. Co. v. Pennsylvania Co. (C. C.) 54 Fed. 730, 19 L. R. A. 387. It seems clear also that the jurisdiction of the federal courts over such a case must be exclusive. It is true that the remedy here sought is not one of those which are expressly provided for by the terms of the act. The act makes special provision for but two remedies, an appeal to the Interstate Commerce Commission and an action at law to recover damages for violation of the provisions of the act, which action, it is declared, shall be brought in "any District or Circuit Court of competent jurisdiction." That the federal courts have exclusive jurisdiction of such actions has been held in Van Patten v. Chicago, M. & St. P. R. Co. (C. C.) 74 Fed. 981, and Sheldon v. Wabash R. Co. (C. C.) 105 Fed. 785. The express provision of the act for an action at law to recover damages should not have the effect to exclude resort to other remedies unless the intention so to do is manifestly expressed. In the act of August 7, 1888, c. 772, 25 Stat. 382 (U. S. Comp. St. 1901, p. 3583), requiring all railroads subsidized by the United States to maintain and operate telegraph lines, for governmental and other purposes, the only remedy expressly given was the right to bring mandamus to enforce the pro-

visions of the act; but it was held in United States v. Union Pacific Railway, 160 U. S. 1, 50, 16 Sup. Ct. 190, 40 L. Ed. 319, that the remedy so afforded was not exclusive, and that the United States was entitled to resort to equity for other and further appropriate relief. The existence of other remedies to enforce the provisions of the interstate commerce act is not left to implication. Not only is there no inhibition of other remedies in the interstate commerce act, but in section 22 there is express provision for the conservation of existing remedies. This can only mean that it was the intention of Congress to permit recourse to all appropriate remedies not inconsistent with the scheme and purpose of the act, for the protection of rights accorded by the act and the redress of wrongs arising thereunder. Prior to the adoption of the interstate commerce act, the state courts had no jurisdiction over interstate rates, for the fundamental reason that no state had the power through any department of its government to regulate commerce with other states. The only courts named in the act to which recourse may be had in actions at law to recover damages are the District and Circuit Courts of the United States. It must have been the intention of the act to give to those courts exclusive jurisdiction of all cases arising under it. "It is manifest," said Justice Story, "that the judicial power of the United States is unavoidably, in some cases, exclusive of all state authority, and, in all others, may be made so at the election of Congress." Martin v. Hunter, 1 Wheat. 304, 337, 4 L. Ed. 97. The whole of the reasoning in the Abilene Cotton Oil Case, upon which the court reached the conclusion that no court may award damages for unreasonable rates until the Interstate Commerce Commission shall have adjudged them unreasonable, applies against the interference by state courts by injunction against the enforcement of proposed illegal interstate rates. For if one of the courts of a state might adjudge interstate rates unreasonable and enjoin them, other courts of the same or of another state might reach a contrary conclusion, resulting in the confusion and conflict which the Supreme Court said would be destructive of the purposes of the act. That objection does not apply to the exercise of the jurisdiction of a federal court.

The appellants rely on In re Keasbey & Mattison Co., 160 U. S. 221. 16 Sup. Ct. 273, 40 L. Ed. 402, to sustain their contention that the provisions of the acts of 1887–1888 limiting the place of suit to the district whereof the defendants are inhabitants, is applicable to the present case. But in that case those provisions were held to be applicable for the reason that the jurisdiction of the federal courts in that class of cases was concurrent and not exclusive. The case was an original proceeding in the Supreme Court for mandamus to the judges of the Circuit Court for the Southern District of New York, requiring them to take jurisdiction of a suit brought against a corporation created under the laws of the state of Massachusetts for infringement of a trade-mark under the act of 1881 (Act March 3, 1881, c. 138, 21 Stat. 502 [U. S. Comp. St. 1901, p. 3401]), providing for the registration in the Patent Office of trade-marks used in commerce with foreign nations or with Indian tribes, and providing for an action for damages, or a suit in equity to protect such trade-mark in any court having jurisdiction over the person guilty of such unlawful act,

and giving to the courts of the United States original and appellate jurisdiction in such cases without regard to the amount in controversy. The decision was expressly based upon the ground that the act did not assume to take away or impair the jurisdiction which the courts of the several states always had over suits for infringement of trademarks.

Objection is made to the jurisdiction on the ground that it does not appear from the bill that the necessary jurisdictional amount is in controversy. The bill alleges that the matter in controversy "exceeds, exclusive of interest and costs, the sum and value of $2,000." In Wetmore v. Rymer, 169 U. S. 115, 18 Sup. Ct. 293, 42 L. Ed. 632, it was held that a suit cannot properly be dismissed by a Circuit Court as not involving a controversy of an amount sufficient to come within its jurisdiction unless the facts appear upon the record to create a legal certainty of that conclusion. In Lee v. Watson, 1 Wall. 339, 17 L. Ed. 557, it was said:

"By 'matter in dispute' is meant the subject of the litigation—the matter for which the suit is brought and upon which issue is joined, and in relation to which jurors are called and witnesses examined."

The matter in dispute in the present suit is the right of the appellants to enforce a proposed schedule of rates. Railroad Co. v. Ward, 2 Black, 485, 17 L. Ed. 311. In principle the case is similar to Washington Market Co. v. Hoffman, 101 U. S. 118, 25 L. Ed. 782, a suit in which a number of complainants whose several interests did not equal the jurisdictional amount sought to enjoin the market company from interfering with their right to occupy their respective stalls. The court said:

"The case is one of two hundred and six complainants suing jointly. The decree is a single one in favor of them all and in denial of the right claimed by the company, which is of far greater value than the sum which, by the act of Congress, is the limit below which an appeal is not allowable."

In Brown v. Trousdale, 138 U. S. 389, 11 Sup. Ct. 308, 34 L. Ed. 987, the complainants were taxpayers who sought to restrain the collection of interest and principal on bonds alleged to have been unlawfully issued by the county. The court said:

"The rule applicable to plaintiffs each claiming under a separate and distinct right in respect to a separate and distinct liability and that contested by the adverse party is not applicable here."

So in City of Ottumwa v. City Water Supply, 119 Fed. 315, 56 C. C. A. 219, 59 L. R. A. 604, in a suit by a taxpayer to enjoin the city from issuing bonds, it was held that the power of the city to issue such bonds is the matter in dispute for the purpose of ascertaining the amount or value in controversy, and not the tax to which the complainant would be subjected. Other cases in point are Texas & P. Ry. Co. v. Kuteman, 54 Fed. 548, 4 C. C. A. 503; American Fisheries Co. v. Lennen (C. C.) 118 Fed. 869. But if it is necessary that the bill aver the requisite amount in controversy as to each complainant, it is evident from the facts stated that such an averment can be made by amendment, and its absence from the bill is not ground for reversing

the injunction order. Giles v. Harris, 189 U. S. 475, 485, 23 Sup. Ct. 639, 47 L. Ed. 909; Fuller v. Montague, 59 Fed. 212, 8 C. C. A. 100.

The order appealed from is affirmed.

NOTE.—The following is the opinion of Hanford, District Judge, on the motion to dismiss:

HANFORD, District Judge. This suit is by individuals and corporations, who are citizens of Washington and California, against six railroad corporations engaged in interstate commerce, incorporated, respectively, in the states of Minnesota, Iowa, Wisconsin, Utah, and Oregon. The object of the suit 'is to obtain a decree restraining the defendants from putting into effect a new schedule of rates on lumber to be carried from this state to points of destination in the several states of the Mississippi Valley, which schedule increases the rates heretofore charged for similar services, and is alleged in the bill of complaint, to be unfair, excessive, and discriminatory. Each of the defendants has appeared specially to contest the jurisdiction of the court, and the case has been submitted upon motions to dismiss the suit for lack of jurisdiction.

Jurisdiction cannot be maintained on the ground of diversity of citizenship, because the complainants are not all citizens nor inhabitants of the state of Washington, and all of the defendants have their legal domiciles in states other than the state of Washington. Smith v. Lyon, 133 U. S. 315, 10 Sup. Ct. 303, 33 L. Ed. 635; Shaw v. Quincy Mining Co., 145 U. S. 444, 12 Sup. Ct. 935, 36 L. Ed. 768. It is the opinion of the court, however, that the jurisdiction rests firmly and safely upon the ground that the suit is one arising under the laws of the United States, and that the restrictive clauses of the statute defining the jurisdiction of the United States Circuit Court are not applicable. This is so because the bill of complaint by positive and specific averments accuses the defendants of having entered into a combination to suppress competition in violation of the act of Congress commonly referred to as the "Sherman Anti-Trust Law," the fourth section of which provides: The several Circuit Courts of the United States are invested with jurisdiction to prevent and restrain violations of this act. And section 5 provides: Whenever it shall appear to the court before which any proceeding under section 4 may be pending that the ends of justice require that other parties shall be brought before the court, it may cause them to be summoned, whether they reside in the district in which the court is held or not. Act July 2, 1890, c. 647, 26 Stat. 209 (U. S. Comp. St. 1901, p. 3201).

Here we have a suit, the object of which is to prevent and restrain violations of this law, and in express terms the law invests this court, as a Circuit Court of the United States, with power to grant the preventive relief which the complainants have sued for. The defendants say that they cannot be sued in this district because they are not inhabitants of the district; but the law provides that, when justice requires it, parties may be brought before the court, whether they reside in the district or not, and certainly in this case justice does require the presence of all these defendants, because they are accused of having entered into an unlawful agreement to increase the cost of carrying on interstate commerce, and a decree which sustains or annuls that agreement will affect the pecuniary rights of every party to the agreement. Therefore they are all entitled to have their day in court. They operate connecting lines of railways traversing state boundaries, and, to obtain adequate protection, exporters of lumber must bring them all into the same forum, in order to compel the carrier which receives a consignment in one state and the one which delivers it in another state to observe the same obligation with respect to the charge for the entire service.

It is apparent that the objection which the defendants are urging here might with equal propriety be urged to defeat the jurisdiction of any other Circuit Court in which a civil action may be instituted to restrain the defendants from violating the anti-trust law by adhering to the alleged unlawful combination. Therefore the clause of the jurisdiction statute which requires civil action to be commenced in the district of which the defendant is an inhabitant, if applicable to this case, is antagonistic to the statute which confers jurisdic-

tion. The Supreme Court of the United States has decided that the restrictive clause is not applicable when its effect is destructive of jurisdiction which the law confers. In re Hohorst, 150 U. S. 653, 14 Sup. Ct. 221, 37 L. Ed. 1211.

After deliberation and careful examination of the authorities to which my attention has been directed, it is my opinion that the jurisdiction is not doubtful. Therefore the several motions to dismiss will be denied.