POSTAL CABLE TELEGRAPH CO. v. CUMBERLAND TELEPHONE & TELEGRAPH CO.

(Circuit Court, M. D. Tennessee, March 30, 1910.)

No. 358.

1. TELEGRAPHS AND TELEPHONES (§ 28*)—DUTY TO FURNISH SERVICE.

A telephone company is engaged in a quasi public service as a common carrier of news, and is therefore bound to furnish an impartial and nondiscriminating service to the public, both at common law and as expressly required by Acts Tenn. 1885, c. 66, § 11.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. §§ 16, 17; Dec. Dig. § 28.*]

2. TELEGRAPHS AND TELEPHONES (§ 34*)—RATES—DISCRIMINATION.

A telephone company under its common-law obligation to furnish equal and nondiscriminating service is bound to charge the same tolls to all persons for the rendition of similar service.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 21; Dec. Dig. § 34.*]

3. TELEGRAPHS AND TELEPHONES (§ 34*)—RATES—DISCRIMINATION.

A telephone company was not entitled to charge a telegraph company a greater rate for service than it charged other business houses for similar service, because the telegraph company derived a greater profit from the use of its telephone in the receipt and delivery of telegraph messages, since the rates chargeable by the telephone company depend on the character of its service rendered, and not on the value of the service to the customer.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 21; Dec. Dig. § 34.*]

4. TELEGRAPHS AND TELEPHONES (§ 34*)—RATES—DISCRIMINATION.

That a telephone company also furnished telegraph service did not authorize it to charge discriminating rates for telephone service furnished to a competing telegraph company, in order to enlarge the profits derived from the telegraph part of its business.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 21; Dec. Dig. § 34.*]

5. TELEGRAPHS AND TELEPHONES (§ 34*)—RATES—DISCRIMINATION.

That a telephone company was engaged in transmitting long-distance telephone communications, and therefore came into competition to some extent with a telegraph company, did not justify a discriminating charge for telephone service furnished the telegraph company higher than that charged other business patrons for like service as legitimate competition, nor was it made lawful merely because complainant did not discriminate between telegraph companies, but endeavored to charge all tele-

*For other cases see same topic &.§ NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

graph companies a higher rate, and that at least one other telegraph company had consented thereto.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 21; Dec. Dig. § 34.*]

**6. TELEGRAPHS AND TELEPHONES (§ 34*)—RATES—DISCRIMINATION—DIVISION WITH TELEGRAPH COMPANIES.**

Where a telephone company charged a flat rate for similar service against other business patrons, it could not require telegraph companies, in order to obtain full telephone service, to share with the telephone company an arbitrary percentage of receipts from business received by the telegraph company from the telephone, yielding a greater or less compensation to the telephone company for the same service according to the distance which the telegram is sent.

[Ed. Note.—For other cases, see Telegraphs and Telephones, Cent. Dig. § 21; Dec. Dig. § 34.*]

**7. INJUNCTION (§ 137*)—RIGHT TO RELIEF—INJUNCTION PENDENTE LITE.**

In a suit to restrain a telephone company from charging increased and discriminating rates for service furnished to a telegraph company, complainant was not entitled to a preliminary injunction as to rates in towns and cities where complainant had contracted to pay the increased rates, and where service had been furnished on that basis for a considerable period.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 307; Dec. Dig. § 137.*]

**8. INJUNCTION (§ 67*)—ADEQUATE REMEDY AT LAW—MULTIPLICITY OF SUITS.**

Where a telephone company had imposed increased and discriminating rates for service furnished to telegraph companies throughout the state, a telegraph company had no complete and adequate remedy at law, and was entitled to sue in equity to restrain the enforcement of such rates to prevent a multiplicity of suits.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 15, 18; Dec. Dig. §§ 16, 19.*]

In Equity. Suit by the Postal Cable Telegraph Company against the Cumberland Telephone & Telegraph Company. On motion for preliminary injunction to restrain defendant from removing its telephone instruments from complainant's offices in Nashville, and certain other towns and cities in Tennessee, and from refusing to furnish telephone service to complainant at rates charged and paid by other patrons of the company having telephones in their business houses. Granted.

John W. Green, John D. Caldwell, Anderson, Felder, Rountree & Wilson, and William W. Cook, for complainant.

William L. Granbery, for defendant.

SANFORD, District Judge. I am of opinion that the motion of the complainant telegraph company should be granted so as to enjoin the defendant telephone company pending this litigation from removing its telephone instruments in the office of the telegraph company in Nashville and other towns and cities in Tennessee, and from refusing to furnish such instruments and telephone service to the telegraph company at the same rates as heretofore in all such towns and cities where

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the telegraph company has been heretofore paying merely the flat rates paid by other patrons of the telephone company having telephones in their business houses.

1. A telephone company, which is often described as a common carrier of news, is engaged in a quasi public service, affected with a public interest, for which it is endowed with some of the sovereign powers of the state, and as such is held to the obligation of an impartial and undiscriminating service to the public upon common-law principles. Cumberland Telephone & Telegraph Co. v. Kelly (C. C. A., 6th Cir.) 160 Fed. 316, 87 C. C. A. 268; State v. Telephone Co. (C. C.) 23 Fed. 539; State v. Telegraph & Telephone Co. (C. C.) 47 Fed. 633, 638; Chesapeake Telephone Co. v. Railway Co., 66 Md. 399, 414, 7 Atl. 809, 59 Am. Rep. 167; Hockett v. State, 105 Ind. 250, 258, 5 N. E. 178, 55 Am. Rep. 201; Cent. Union Telephone Co. v. State, 118 Ind. 194, 19 N. E. 604, 10 Am. St. Rep. 114; State v. Telephone Co., 61 S. C. 83, 39 S. E. 257, 55 L. R. A. 139, 85 Am. St. Rep. 870; State v. Telephone Co., 17 Neb. 126, 22 N. W. 237, 52 Am. Rep. 404; State v. Telephone Co., 93 Mo. App. 349, 67 S. W. 684. Thus, in accordance with this general rule, it is held under the great weight of authority that a telephone company operating a telephone system under a license from the owner of the patent binding it not to furnish telephone service to any telegraph company except to one particular telegraph company may nevertheless be compelled to discharge its obligation of equal service and to furnish like facilities and service to other telegraph companies under like terms and conditions. State v. Telephone Co. (C. C.) 23 Fed. 539; State v. Telegraph & Telephone Co. (C. C.) 47 Fed. 633, 638; Delaware Telephone Co. v. State, 50 Fed. 677, 2 C. C. A. 1; State v. Telegraph Co., 36 Ohio St. 296, 38 Am. Rep. 583; American Union Telegraph Co. v. Telephone Co. (C. C.) 1 Fed. 698; Bell Telephone Co. v. Commonwealth (Pa.) 3 Atl. 825; Chesapeake Telephone Co. v. Telegraph Co., 66 Md. 399, 7 Atl. 809, 59 Am. Dec. 167. This common-law obligation of a telephone company is enforced, under severe penalty, by chapter 66, Tenn. Acts 1885, § 11, which provides that:

"Every telephone company doing business within this state, and engaged in a general telephone business, shall supply all applicants for telephone connection and facilities without discrimination or partiality, provided such applicant comply with the reasonable regulations of the company, and no such company shall impose any condition or restriction upon any such applicant that is not imposed impartially upon all persons or companies in like situations, nor shall such company discriminate against any individual or company engaged in lawful business by requiring as condition for furnishing such facilities that they shall not be used in the business of the applicant or otherwise, under penalty of one hundred dollars for each day such company continues such discrimination and refuses such facilities after compliance or offer to comply with the reasonable regulations, and time to furnish the same has elapsed, to be recovered by the applicant whose application is so neglected or refused."

This statute is merely declaratory of the common-law obligation of telephone companies, giving a new remedy and imposing severe penalties for nonobservance. Cumberland Telephone & Telegraph Co. v. Kelly, supra.

2. This common-law obligation of equal and undiscriminating service clearly requires that the same charges shall be made to all persons for the rendering of similar service. The rule governing in the analogous case of telegraph companies was stated in Western Union Telegraph Co. v. Call Pub. Co., 181 U. S. 92, 100, 21 Sup. Ct. 561, 564, 45 L. Ed. 765, as follows:

> "They are endowed by the state with some of its sovereign powers, such as the right of eminent domain, and so endowed by reason of the public service they render. As a consequence of this, all individuals have equal rights both in respect to service and charges. Of course, such equality of right does not prevent differences in the modes and kinds of service and different charges based thereon. There is no cast-iron line of uniformity which prevents a charge from being above or below a particular sum, or requires that the service shall be exactly along the same lines. But that principle of equality does forbid any difference in charge which is not based upon difference in service, and, even when based upon difference of service, must have some reasonable relation to the amount of differences, and cannot be so great as to produce an unjust discrimination. To affirm that a condition of things exists under which common carriers anywhere in the country engaged in any form of transportation, are relieved from the burdens of these obligations is a proposition which, to say the least, is startling."

Applying this same rule to telephone companies, it follows that all individuals have equal rights both in respect to services from the telephone company and the charges therefor, and that there can be no lawful difference in charge which is not based upon difference in service and has a reasonable relation to the amount of the difference.

It appears, however, from the bill and the affidavits filed in support of the motion for an injunction that there is no substantial difference in the mode and kind of service rendered by the telephone company to the complainant and to other users of telephones at their business houses. It follows, therefore, that the rule of equal and undiscriminating service prevents the telephone company from charging the telegraph company a higher rate for such service than it charges its other business patrons for similar service.

It is clear that a greater charge is not justified against the telegraph company merely on account of the greater profit which it may receive from the telephone service than other business patrons. To consider as an element entering into the proper charge for service performed by a common carrier the financial value of such service to the customer, irrespective of the nature of the service rendered by the carrier, would manifestly be to introduce an entirely new basis of regulating its rates of service, directly violative of the fundamental rule that they are to depend upon the character of the service rendered, and one which cannot be supported either upon principle or authority. If the telephone company were justified in imposing a greater rate upon a telegraph company than upon other business patrons because of the greater financial benefit of such service to the telegraph company, it could make like discrimination between its other business patrons, and could charge business houses doing a profitable business by means of the telephone a higher rental than others doing a less profitable business; and, if on account of the greater profit involved it is entitled to charge a telegraph company a percentage on the business received by it over the

telephone, it might with equal propriety require every business man having a telephone to keep an account of the orders which he receives over the telephone, and charge him, in addition to the usual rental for business telephones, a percentage on the business so received. The mere statement of such proposition carries its own conclusive answer.

Neither can the charging of a higher rate to the complainant telegraph company than to other business patrons receiving similar services be supported on the ground that it is a competitor in business with the telephone company.

In so far as this defense is predicated upon the statement in the answer that the defendant is engaged not merely in the telephone business but also in the telegraph business proper, it is to be observed that it nowhere appears from the answer that it is engaged in any telegraph business in the state of Tennessee; and, further, the affidavit of G. A. Paine, which is not contradicted, shows that the defendant does practically no public telegraph business for the public.

But, even if the defendant were engaged to any material extent in the telegraph business in addition to its telephone business, I am of opinion that its obligations in respect to its telephone business must be determined with reference to that business alone, and that it has not the right to discriminate in charges for telephone service merely because it may also be engaged in another branch of business which it desires to protect by such discrimination. In Louisville Transfer Co. v. American Dist. Telephone Co., decided in the Louisville Chancery Court in 1881 and reported in 1 Ky. L. J. 144, 1 Chicago Leg. News 15, and 24 Alb. L. J. 283, the plaintiff carried on a public transfer business in public omnibuses and carriages, and the defendant operated a telephone exchange, and also organized as a part of its business a system of public transfers by carriages and coupés. The defendant, having placed a telephone in the plaintiff's office, afterwards threatened to remove it, and, upon the plaintiff's application for an injunction, the Chancellor held that the defendant, being engaged in two distinct employments, one the operating of a telephone exchange and the other a transfer service, there was no rivalry between the plaintiff and the defendant in the telephone business; that the defendant as to its telephone business was a distinct person from that as to its transfer business, and that as to its telephone business it occupied the same position towards the plaintiff as towards the rest of the public, and, being a quasi public servant, was as such governed by the law of common carriers, and bound to serve alike all the general public, including the plaintiff, on reasonable terms, without impartiality. See, also, Sunset Telephone & Telegraph Co. v. Pomona (C. C.) 164 Fed. 561, 568.

The underlying question in this case then resolves itself into this: Does the fact that the telephone company furnishes not merely the means for local communication, but also engages in the business of furnishing a means for long-distance communication or transmission of news by telephone, and that the telegraph company is also engaged in the business of furnishing a means for long-distance communications or transmission of news by telegraph, relieve the telephone company from

its obligation of equal and undiscriminating service to the telegraph company, and justify the telephone company in refusing to furnish the telegraph company facilities which it may use as an aid to securing the business of transmitting long-distance telegraph messages, coming in a sense in competition with the long-distance telephone business of the defendant, except upon its paying the telephone company a higher rate for such service than that charged to other business patrons for like service, and based, in part, at least, upon a percentage of the business obtained by the telegraph company through the use of the telephone facilities? After a careful consideration, I am of opinion that such discrimination is not justified, and that it is not made legal merely because the telephone company does not discriminate between the complainant and other telegraph companies, but seeks to impose the same additional rates, involving a percentage on the business obtained by the telegraph companies through the use of the telephones, upon all telegraph companies alike, and that at least one other telegraph company has consented to such increased rates.

Aside from the objection to the particular form of increased rates proposed, which requires the telegraph companies, in order to obtain full telephone service, to share with the telephone company an arbitrary percentage of their receipts from business received over the telephone, yielding a greater or less compensation to the telephone company for the same service according to the greater distance which the telegram is sent by the telegraph company, and the further objection that the system of rates demanded involves either the requirement that the telegraph company shall, as a condition of obtaining the telephone service, go to the expense of keeping a record of the business received and delivered over the telephone and of submitting accounts of such business to the telephone company, or else that the telephone company shall, by a system of espionage, inform itself as to the use made by the telegraph companies of its lines for the receipt and delivery of messages, I am of opinion that, even if the proposed increase in charges were relieved of these objections and put in the form merely of an increase in the flat rate charged to the telegraph companies, such increase of rates would be an unlawful discrimination against them as compared with the rest of the business community receiving from the telephone company similar service at a lesser rate.

In its last analysis, the defendant's argument that it is justified in charging a greater rate to telegraph companies for its facilities than is charged to other business patrons for similar services must rest upon the underlying proposition that it is authorized to altogether decline to furnish telegraph companies, as business competitors, such facilities for use in their business in the receipt and delivery of messages; and that hence, being authorized to altogether refuse to furnish them such facilities for such use, it may therefore charge them such rates therefor as it may deem proper, provided all telegraph companies are charged on the same basis, without violating its obligation of equal and impartial service. And obviously, if the telephone company is authorized to arbitrarily charge telegraph companies a higher rate for such service than is charged to other business patrons, entirely apart from the character of the service rendered, it may evidently increase

such rate to a point where it is practically prohibitive of the business altogether.

While it is true that the right of a telephone company to provide that its telephones shall not be used for the transmission of messages on which tolls shall be paid to any other party than itself is apparently upheld in the decision by Judge Parker in People v. Hudson River Telephone Co., 19 Abb. N. C. 466, rendered at Special Term in 1887, and fully recognizing the weight to be given to the views of the eminent judge delivering the opinion, I am unable to concur in the conclusion reached. I am of opinion that the common-law obligation imposed upon telephone companies of equal and undiscriminating service imposes upon them the obligation of rendering such service to all members of the public desiring the same for a lawful purpose, and that, upon grounds of public policy, they are not exempt from the obligation of such equal services merely because a person desiring the same is in a sense a competitor, who desires to use such service as an additional facility to aid him in transacting his business. As was said by the Supreme Court in Western Union Telegraph Co. v. Call Pub. Co., supra, in reference to telegraph companies:

"They are endowed by the state with some of its sovereign powers, such as the right of eminent domain, and so endowed by reason of the public service they render. As a consequence of this, all individuals have an equal right both in respect to service and charge."

The portion of the sovereign power with which telephone companies are as common carriers endowed is likewise given them for the purpose of serving not merely part of the public, but all of the public; and all persons composing the public, even though they be, in a sense, competitors, are entitled to use their privileges upon equal terms, and "have equal rights both in respect to service and charge." And the Tennessee statute above quoted expressly forbids a telephone company to discriminate against any other corporation engaged in a lawful business by requiring as a condition of furnishing its service that such service shall not be used in the business of the applicant; and such other corporation, being entitled to equality of service regardless of the use of such service in their business, is likewise entitled to equality of charges for such service.

I am of opinion that a telephone company cannot lawfully refuse to a telegraph company the use of a telephone to aid it in receiving and delivering messages, any more than the telegraph company could in the converse situation refuse a telephone company the right to transmit by telegram a telephone message which had been received over the telephone lines destined to a person living at another place where there was a telegraph service, but no telephone. The telephone company in such case would, I think, clearly have the right to send such telegram, and the telegraph company could clearly not refuse to send it merely because this would be an aid and benefit to the telephone company in its business of long-distance transmission of news.

The argument in behalf of the defendant in this matter entirely overlooks the public right and interest which is involved. It is shown by the affidavits of various business men that the privilege of sending messages over the telephone to a telegraph office is of great public

convenience. If, however, a telephone company could refuse a telegraph company permission to use a telephone for the purpose of receiving messages to be transmitted by it, it results that the public would be deprived of the right of transmitting over the telephone to the telegraph office messages which they desire to deliver to a telegraph company for transmission by telegraph. To deny the public such right would, in my opinion, be in conflict with the purpose for which telephone companies are endowed with part of the sovereign power of the state. It is the purpose of their creation that they shall serve the public, and it is, as I view it, the right of every member of the public becoming a subscriber to a telephone exchange to be connected with and send messages to any other person or corporation engaged in a lawful business willing to pay the telephone companies the rate for a telephone which it charges generally for the character of service involved. This right of the public and of the users of other telephones to have the benefit of communication with telegraph offices would, in my opinion, be unlawfully impaired if the telephone company could refuse to furnish telegraph companies telephones for use in receiving messages.

And if a telephone company may, in accordance with defendant's argument, lawfully refuse to furnish its facilities to a competitor in the long-distance transmission of news, it would appear that a railroad company might, for like reason, refuse to transport over its line coal consigned to a competing railroad to be used in driving its engines, or, by parity of reasoning, charge it a higher rate than it charged for transporting coal for other persons, or might refuse to carry altogether, or, except at a higher rate than it carried passengers generally, the traffic agent of a competing railroad traveling over its line for the purpose of securing business. Clearly, however, a railroad would not in such case be exempt from the obligations of equal and undiscriminating service to its competitor as to any other member of the public requiring a like service in the transportation either of commodities or persons, without reference to the object or purpose of the transportation; and so, I think, the obligation of the telephone company must depend entirely upon the character of the service required, and not upon the purpose for which it is desired or its own business relations to the applicant as competitor or quasi competitor or otherwise.

I find nothing contrary to this view in the Express Cases, 117 U. S. 1, 24, 6 Sup. Ct. 542, 628, 29 L. Ed. 791, which merely held that as railroad companies were not obliged either by the common law or by usage to do more as express carriers than to furnish the public at large with reasonable express accommodation, and manifestly could not extend like facilities upon their trains to all express companies, they were not required in the very nature of things to furnish all independent express companies equal facilities for doing an express business upon their trains.

Being of opinion, therefore, that a telephone company cannot properly, either at common law or under the Tennessee statute, refuse to furnish a telegraph company with telephone facilities under the condition that they shall not be used in furthering the business of the tele-

graph company, it follows in my opinion that it cannot lawfully discriminate against a telegraph company by requiring from it a greater charge for such service than is imposed upon other business patrons receiving similar service, either in the form of percentage on its business or otherwise.

3. It is also urged by the telephone company that to prevent the enforcement of the rates in question will bring about a discrimination as between telegraph companies by requiring it to furnish the Western Union Telegraph Company, under its contract, with service at a higher rate than that charged to complainant. This difficulty may, however, be avoided by the telephone company by not insisting upon the payment by the Western Union Telegraph Company of the additional rate which it is not authorized to charge.

4. As it appears, however, from the defendant's answer, that in some towns and cities in Tennessee the complainant has acquiesced in the increased rates, and has heretofore contracted to pay the same, and has had service on the basis of this increased rate for a considerable period of time, and this is not denied by the complainant, I am of the opinion that as to such points, without further information as to the precise facts and the nature of the contract, the complainant is not in a position entitling it to an injunction pendete lite, but that the matter of such rates may well rest until the final determination of this case upon its merits.

5. As to the defendant's argument that the complainant has a plain and adequate remedy at law, I am of opinion that in view of the continuing nature of the demand made by the defendant and the multiplicity of suits to which complainant would have to resort to enforce its rights, if it should pay the increased rate and sue to recover the same, the remedy at law would not be complete and adequate, and equity therefore has jurisdiction. Donovan v. Pennsylvania Co., 199 U. S. 279, 304, 26 Sup. Ct. 91, 50 L. Ed. 192; Northern Pac. Ry. Co. v. Lumber Manufacturers' Ass'n (C. C. A., 9th Circuit) 165 Fed. 1, 91 C. C. A. 39.

6. I deem it proper, however, in granting an injunction pendente lite in this case, in order that any rights of the defendant may be fully secured pending the final hearing, to provide as a condition of the granting of the injunction that the complainant shall, pending this litigation, keep in its several offices in the towns and cities in Tennessee to which the injunction applies a full and accurate record of all messages received by it over the telephone lines of the defendant, and its tolls therefor, and of all telegraph messages delivered by it over telephone lines of the defendant, such statement to be filed monthly in this cause within 10 days after the 1st day of each successive month, and reserving the right of the defendant to move to dissolve the injunction if this condition is not properly complied with.

9. An order will accordingly be entered granting the complainant's motion for an injunction pendente lite to the extent herein above stated and subject to the condition hereinabove expressed, and upon the complainant's executing an injunction bond in the sum of $10,000 with good and sufficient security to be approved by the clerk of this court.