## UNITED STATES v. NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF NEW YORK.

No. 285. Argued December 16, 1908.—Decided February 23, 1909.

Under the Elkins Law of February 19, 1903, c. 708, 32 Stat. 847, a carrier can be prosecuted for the offense of rebating where it is a party to a joint rate although it has not filed or published the same.

While criminal statutes are not to be enlarged by construction, and a crime must be clearly defined in its terms, they are to be reasonably construed with a view to effecting the purpose of their enactment.

THE facts are stated in the opinion.

*Mr. Henry L. Stimson,* with whom *Mr. Assistant Attorney General Ellis* was on the brief, for plaintiff in error:

The very method of rebating herein charged was prevalent prior to 1903; was called to the attention of Congress by the

Interstate Commerce Commission; provisions were inserted into the Elkins Law for the avowed purpose of stopping the practice, and the enactment of these provisions constitutes a construction of the law to the effect that it covers the precise offense here charged. *Cin., N. O. & T. P. Ry. Co.* v. *Int. Comm. Comn.*, 162 U. S. 184, 192, 193; Ann. Rep. Int. Comm. Comn. 1894, p. 32; Ann. Rep. Int. Comm. Comn. 1898, p. 7; First Ann. Rep. Int. Comm. Comn. pp. 134, 135, 136; *United States* v. *Hanley*, 71 Fed. Rep. 672; *Armour Packing Co.* v. *United States*, 209 U. S. 56, 72; *Int. Comm. Comm.* v. *Reichman*, 145 Fed. Rep. 235, 240.

The provisions of the first section of the Elkins Law expressly cover and make criminal the transactions set out in this indictment, and other independent clauses of that act, not noticed by the court below, also penalize the offense. *Int. Comm. Comm.* v. *Reichman*, 145 Fed. Rep. 235; Holmes' Common Law, p. 134; *Williams* v. *United States*, 168 U. S. 382; *Wechsler* v. *United States*, 158 Fed. Rep. 579.

The Government's view of the construction of this law is in accord with that expressed by this court in the *Cisco Oil Mill case*, and has been supported by all reported opinions of lower courts, while the view of the court below, if carried to its logical conclusion, would produce results expressly condemned by this court in the *Cisco case*, and necessarily contrary to its decisions in the *Armour* and *Burlington* cases.

The ultimate question to be determined is whether the defendant has established and put in force the tariff from which it is alleged to have departed. By participating in a joint rate a carrier establishes that tariff as to its own lines, just as it would establish it by filing or publishing it. The participation, the filing, and the publishing are merely different ways in which the ultimate fact of the establishment of the rate can be shown as against a carrier, and no one of them is intended by the law to be made the sole condition precedent to the establishment of the tariff rate. *Texas & Pacific Ry.* v. *Cisco Oil Mill*, 204 U. S. 449, 451; see also *Cochran* v. *United States*, 157 U. S. 286,

290. The precise question raised by this demurrer has been repeatedly decided by the courts against the contention of the defendants. *United States* v. *Wood,* 145 Fed. Rep. 405, 409; *Camden Iron Works* v. *United States,* 158 Fed. Rep. 561; *C., B. & Q. R. R. Co.* v. *United States,* 209 U. S. 90; *Armour Packing Co.* v. *United States,* 209 U. S. 56.

Mr. *Austen G. Fox,* with whom Mr. *John D. Lindsay* and Mr. *Albert H. Harris* were on the brief, for defendant in error:

Even though it were true that the method of rebating charged by this indictment was prevalent prior to 1903, was reported to Congress by the Interstate Commerce Commission and that provisions were inserted in the Elkins act for the avowed purpose of stopping the practice, the failure of the framer of the statute to effect this purpose cannot be overcome by any judicial addition to its language. Broom's Legal Maxims, 56; *Hobbs* v. *McLean,* 117 U. S. 567, 579; *United States* v. *Goldenberg,* 168 U. S. 95, 102; *Swift* v. *Luce,* 27 Maine, 285; *Gardner* v. *Collins,* 2 Pet. 58; *Rex* v. *Barham,* 8 B. & C. 99; *Hadden* v. *Collector,* 5 Wall. 107, 111, 112; *United States* v. *Trans-Missouri Freight Association,* 290 U. S. 318; *Alldridge* v. *Williams,* 3 How. 9; *Soon Hing* v. *Crowley,* 113 U. S. 703.

The provisions of the first section of the Elkins act do not, expressly or upon any fair construction of its language, cover or make criminal the transaction set out in the indictment.

Within the meaning of the statute a rebate is a different thing from a concession or discrimination, precisely as the same differ from each other. Certainly the payment of a rebate is neither an omission to file or to observe a tariff. The theory that although it was drawn "with special reference to the rebate clause" the indictment can be supported upon any other provision is therefore quite unsound.

The transaction is not covered by the "rebate clause of the Elkins act." *Interstate Comm. Comm.* v. *Reichman,* 145 Fed. Rep. 235, discussed and distinguished. See *United States* v. *Palmer,* 3 Wheat. 610; *Smith* v. *Townsend,* 148 U. S. 490. To

sustain the contention of the Government would be to read into the statute the words "whether it had filed that rate or not, and whether carried by another carrier or by itself."

A statute which creates a new liability, unknown to the common law, is to be strictly construed, and is not to be extended beyond the clear import of its terms. *Nor. Pac. Ry. Co.* v. *Whalen*, 149 U. S. 157.

There can be no constructive offense; if there be any fair doubt whether the statute embraces the case of the accused, it must be resolved in favor of the accused. *United States* v. *Clayton*, 2 Dill. 219; *United States* v. *Biggs*, 157 Fed. Rep. 264, 270.

This rule applies particularly to statutes which create crimes. *United States* v. *Whittier*, 5 Dill. 35, 39; see also *Bolles* v. *Outing Co.*, 175 U. S. 262; *United States* v. *Sheldon*, 2 Wheat. 119; *United States* v. *Morris*, 14 Pet. 694; *United States* v. *Clayton*, 2 Dill. 226; *United States* v. *Reese*, 5 Dill. 413; *United States* v. *Wiltberg*, 5 Wheat. 76, 95; Maxwell, Inter. of Stat. (4th ed.), p. 397; *London Council* v. *Aylesbury* (1898), 1 Q. B. 106.

MR. JUSTICE DAY delivered the opinion of the court.

This proceeding is here under the act of March 2, 1907, c. 2564, 34 Stat. 1246, permitting the Government to bring to this court a case where the court below sustains a demurrer to the indictment, in which the judgment involves the construction of a Federal statute upon which the indictment is founded.[1] The indictment to which the demurrer was sustained in this case charges that the Missouri Pacific Railway Company, the Cleveland, Cincinnati, Chicago and St. Louis Railroad Company, the Lake Shore and Michigan Southern Railway Company and the New York Central and Hudson River Railroad Company established a joint tariff of rates, fares and charges which was filed with the Interstate Commerce Commission by the Missouri Pacific Railway Company, in which the rate set forth and en-

---

[1] For the statute in full see 211 U. S. 398.

forced from Poplar Bluff, Missouri, to New York upon cooper-
age materials was 35 cents for each 100 pounds. It is then
charged that in January, 1898, the defendant's traffic manager,
Nathan Guilford, and Lowell M. Palmer, president of and agent
for the Brooklyn Cooperage Company, entered into an unlaw-
ful agreement and arrangement for the shipping of cooperage
material over the through line and route aforesaid from Poplar
Bluff, Missouri, to New York City, providing that for the said
transportation the Brooklyn Cooperage Company should pay
to the aforesaid common carriers the lawful published rates
and charges; that thereafter the defendant, the New York
Central and Hudson River Railroad Company, should pay to
the said Palmer, as agent for the cooperage company, the sum
of $5\frac{4}{8}$ cents for each 100 pounds of said cooperage material so
transported, thereby reducing the lawful tariff in that amount,
with the result that such cooperage material should and would
be transported at a less rate than that named in the published
tariffs. The indictment then charged a delivery to the Mis-
souri Pacific Railroad Company at Poplar Bluff for shipment
to New York of cooperage material, which was accordingly
shipped to New York by the connecting carriers aforesaid, and
over the continuous line and route so established. The indict-
ment charges the payment of certain sums by the defendant to
Palmer for the benefit of the cooperage company for rebates
and concessions in respect to the carriage of said cooperage
material. Different counts in the indictment cover specifically
different payments.

The effect of these transactions is charged to be that the de-
fendant did thereby unlawfully and willfully give a rebate and
concession in violation of the act to regulate commerce, whereby
the property was transported by said corporation at a less rate
than that named in the tariffs aforesaid, published and filed by
such common carrier, as required by said act to regulate com-
merce and the acts amendatory thereof and supplemental
thereto.

We need not repeat the discussion had as to the objections

to the Elkins act, 32 Stat. 847, which were considered in
Nos. 57 and 69, *ante.* The court below sustained the demurrer
upon the ground that the defendant company, the New York
Central and Hudson River Railroad Company, is not averred
to have filed with the Interstate Commerce Commission the
through rate at which the transportation was had, but, as
charged in the indictment, the same was filed by the initial com-
mon carrier, the Missouri Pacific Company. 157 Fed. Rep.
293. The question then is, Can a carrier be prosecuted under
the Elkins act for the offense charged in this indictment where
it is a party to a joint rate but has not filed and published the
same? The charge in the indictment is not for the failure of the
New York Central and Hudson River Railroad Company to
publish the joint tariff, if it were required to do so by the act,
but is for the giving of a rebate or concession, and it is con-
tended that the first section of the Elkins act makes it unlawful
to give or receive any rebate, etc., "whereby any such property
shall by any device whatever be transported at a less rate
than that named in the tariffs *published and filed by such car-
rier* as is required by said act to regulate commerce and acts
amendatory thereto, or whereby any other advantage is given
or discrimination practiced." The argument is that inasmuch
as the tariff was filed and published by the Missouri Pacific
Company and not by the defendant railroad company, it could
not be prosecuted for the offense alleged in the indictment.
By § 6 of the act of March 2, 1889, c. 382, 25 Stat. 855, it is re-
quired, concerning the filing of tariffs:

"And in cases where passengers and freight pass over con-
tinuous lines or routes operated by more than one common
carrier, and the several common carriers operating such lines
or routes establish joint tariffs of rates or fares or charges for
such continuous lines or routes, copies of such joint tariffs shall
also, in like manner, be filed with said commission."

It is said to have been the practice that such joint tariffs
should be filed by the initial carrier. In any event, it was con-
tended and was held by the Circuit Court that inasmuch as the

Elkins act referred only to the tariffs "published and filed by such carrier," and the rebates in this case had been given by a carrier who did not publish and file the rate, the latter company did not come within the terms of the act. We find, however, that § 1 of the Elkins act, in which the language quoted is used, also contains the following language (32 Stat. 847):

"Whenever any carrier files with the Interstate Commerce Commission or publishes a particular rate under the provisions of the act to regulate commerce or acts amendatory thereto, or participates in any rates so filed or published, that rate as against such carrier, its officers or agents, in any prosecution begun under this act shall be conclusively deemed to be the legal rate, and any departure from such rate, or any offer to depart therefrom, shall be deemed to be an offense under this section of this act."

The learned judge of the Circuit Court treated this provision as one relating to evidence, and not as establishing a substantive offense. But we think this is giving too narrow a construction to the terms of the statute and fails to give effect to the language used. We recognize the rule which is laid down in the cases cited by counsel for the defendant in error, that criminal statutes are not to be enlarged by construction, and that a crime must be clearly defined in the terms of the act before it can be held to be embraced within its provisions. But while this is true, criminal statutes, like other acts of legislation, are to receive a reasonable construction, with a view to effecting the purpose of their enactment, and we think it entirely clear that the concluding part of § 1 of the Elkins act which we have above quoted brings all of the carriers who have participated in any rate filed or published within the terms of the act, as much so as if the tariff had been actually published and filed by such participating carrier. For the statute specifically provides that the published rate shall be conclusively deemed in any prosecution under the act to be the legal rate as against the carrier who files the same, or "participates in any rates so filed and published;" and the section further provides that any

departure from such rate, which would include rates either published or participated in, shall be deemed to be an offense under the act. This part of the first section of the Elkins act was evidently enacted with a view to meeting the very situation developed in this case, wherein a joint rate has been established binding upon all who are parties thereto, and has been filed by one of the participating carriers.

We think the learned judge was in error in holding that offenses of the character charged in this indictment could be prosecuted only as against the carrier actually filing and publishing the joint rate. The judgment of the Circuit Court is

*Reversed.*

MR. JUSTICE MOODY took no part in the decision of this case.