WICKWIRE STEEL CO. et al. v. NEW YORK CENT. & H. R. R. CO. et al.

(Circuit Court of Appeals, Second Circuit. June 14, 1910.)

No. 329.

1. CARRIERS (§ 34*)—INTERSTATE FREIGHT RATES—REMEDIES.

Under Interstate Commerce Act Feb. 4, 1887, c. 104, §§ 13, 15, 24 Stat. 383, 384 (U. S. Comp. St. 1901, pp. 3164, 3165), authorizing complaints to the Interstate Commerce Commission against unjust freight rates fixed by a carrier, and under section 16, authorizing awards of damages by the Commission, and empowering the federal Circuit Court to enforce the Commission's orders by injunction or other proper process, the Circuit Court has no jurisdiction of a suit to enjoin an advance in freight rates on a commodity pursuant to a conspiracy to discriminate against complaints, though section 9 provides that one claiming to be damaged by a carrier may elect to complain to the Commission or sue in the federal courts, though section 22 provides that the act shall not alter existing remedies, and though section 23 gives the Circuit and District Courts jurisdiction in case of violations by carriers of certain provisions of the act to issue mandamus to compel conformity.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 91, 92; Dec. Dig. § 34.*]

2. CARRIERS (§ 34*)—INTERSTATE FREIGHT RATES—CHANGES—WHEN EFFECTIVE—JURISDICTION TO RESTRAIN.

Under Interstate Commerce Act Feb. 4, 1887, c. 104, § 6, 24 Stat. 380 (U. S. Comp. St. 1901, p. 3156), requiring carriers to file freight rate schedules with the Interstate Commerce Commission and to post them in railway stations, and providing that changes in rates shall not take effect until after 30 days' notice to the Commission and to the public in the

same way, a rate filed with the Commission is put in force, though not so posted, as affecting the Circuit Court's jurisdiction to enjoin it.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 34.*]

Appeal from the Circuit Court of the United States for the Western District of New York.

Bill by the Wickwire Steel Company and others against the New York Central & Hudson River Railroad Company and others. From a decree for complainants, defendants appeal. Reversed, with directions to dismiss the bill.

George Stuart Patterson, Wm. Ainsworth Parker, Frank Rumsey, Hoyt & Spratt, Harris, Havens, Beach & Harris, and Moot, Sprague, Brownell & Marcy, for appellants.

Rogers, Locke & Babcock, for appellee Lackawanna Steel Co.

Love & Keating, for appellee New York State Steel Co.

Kenefick, Cooke, Mitchell & Bass, for appellee Tonawanda Iron & Steel Co.

Robert C. Palmer, for appellee Wickwire Steel Co.

Robert F. Schelling, for appellee Buffalo Union Furnace Co.

Before LACOMBE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. The complainants, producers of iron and steel in or near the city of Buffalo, get their furnace coke from the Connellsville region in Western Pennsylvania in car load lots, which the defendant railroad companies transport under joint arrangements for through rates. February 28, 1910, the complainants presented the bill in this cause to the judge of the Circuit Court of the United States for the Western District of New York alleging that the defendants threatened to advance the rates on coke from $1.65 to $1.85 a ton; that the rate of $1.65 was adequate and remunerative; that the advance was the result of a combination and conspiracy between the defendants for the purpose of discriminating against the complainants in favor of producers of iron and steel in the Gary and Pittsburg districts; that the proposed increase would cause the complainants irreparable damage; and they prayed for an injunction and a restraining order in the meantime enjoining and restraining the defendants from filing or enforcing the threatened tariff.

Upon this bill and affidavits in support thereof the judge granted a temporary order restraining the defendants from promulgating the proposed schedule through the Interstate Commerce Commission, and from putting it into effect pending the determination of the reasonableness of the rate by the Interstate Commerce Commission, together with an order upon the defendants to show cause March 8th why the restraining order should not continue until final hearing. Upon the return day the defendants submitted affidavits to the effect that they had actually forwarded the tariffs to the Interstate Commerce Commission at Washington February 25th, to become effective April 1st, except in the case of the Baltimore & Ohio Railroad Company, which filed its tariff February 28th, but without knowledge of

the granting of the restraining order. March 12th the judge of the Circuit Court continued the injunction until the further order of the court, and required the defendants to continue to transport the coke at the old rate upon condition that the complainants should file a bond to indemnify them for any loss in case the Commission found the rate to be reasonable, and that the complainants should within 10 days file their complaint with the Interstate Commerce Commission, both of which things have been done.

The defendants, without answering the charge that the rate is unreasonable, discriminatory, and the result of a conspiracy, stand flatly upon the proposition that the court had no jurisdiction of the subject-matter. This is the question to be determined.

Section 9 of the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 382 [U. S. Comp. St. 1901, p. 3159]) provides that any person claiming to be damaged by any carrier subject to the provisions of the act may elect whether to complain to the Commission or to bring a suit in any District or Circuit Court of the United States of competent jurisdiction. Section 22 provides that nothing in the act contained "shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies." Section 23 gives the Circuit and District Courts of the United States jurisdiction in the case of violations by a common carrier of certain provisions of the act to issue a writ or writs of mandamus against said common carrier requiring it to conform to the act; these remedies being cumulative.

These broad provisions would apparently justify the exercise by the court of any of its inherent powers in behalf of persons complaining of any violations by carriers of the act; but the Supreme Court has held, in Texas & Pacific Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, that they are to be construed with reference to and limited by the powers conferred by Congress upon the Interstate Commerce Commission, for the purpose of insuring and enforcing the establishment and maintenance of reasonable and uniform rates. In other words, they are to be construed as intended to redress wrongs that need not be complained of in the first instance to the Interstate Commerce Commission. Mr. Justice White concluded his opinion with these words:

"Concluding, as we do, that a shipper seeking reparation predicated upon the unreasonableness of the established rate must, under the act to regulate commerce, primarily invoke redress through the Interstate Commerce Commission, which body alone is vested with power originally to entertain proceedings for the alteration of an established schedule, because the rates fixed therein are unreasonable, it is unnecessary for us to consider whether the court below would have had jurisdiction to afford relief, if the right asserted had not been repugnant to the provisions of the act to regulate commerce."

Conceding this, it is argued that the Circuit Court may exercise its inherent powers to prevent threatened injury where the rates have not been actually fixed in accordance with the provisions of the statute. In other words, if the carrier simply threatens to fix a rate, or has not fixed the rate effectively, the court may restrain the carrier from so doing, if it regards the rate as unreasonable or likely to cause.

irreparable damage. The effect of this would be to prevent the carrier from ever fixing or changing its rates in accordance with the law. Be this as it may, we think the rate was fixed. Section 6 of the act requires the carrier to file with the ·Commission and keep open to public inspection, by posting in every depot, station, or office where passengers or freight are received for transportation, schedules showing its rates between different points. Changes in rates are not to go into effect until after 30 days' notice to the Commission and to the public has been given in the same way. It is argued that, because the affidavits state that the schedules have been filed, but not that they have been posted, nothing has been done, because they cannot become effective 30 days after filing only. But the Supreme Court, in the case of Texas & Pacific Ry. v. Cisco, 204 U. S. 449, 27 Sup. Ct. 358, 51 L. Ed. 562, has held that a tariff is established, even if it has not been posted or properly posted. Mr. Justice White said:

"The filing of the schedule with the Commission and the furnishing by the railroad company of copies to its freight offices incontrovertibly evidenced that the tariff of rates contained in the schedule had been established and put in force as mentioned in the first sentence of the section, and the railroad company could not have been heard to assert to the contrary."

See, also, Kiel Wooden Ware Co. v. Chicago, Milwaukee & St. Paul Ry. Co., opinion No. 1,233, Interstate Commerce Commission.

It is true that there is no evidence in this case that the schedule had been furnished to the freight offices of the defendants; but all the same the rate mentioned has been established and put in force, and we think the jurisdiction of the Circuit Court is no different from or other than it would be if the rate had been posted.

Section 13 authorizes any person complaining to apply to the Commission, which shall institute an investigation. Section 15 authorizes the Commission to pass upon the complaint. Section 16 authorizes it to make an award of damages, and provides a method by which the Circuit Court of the United States may enforce the payment of the damages, or, if the order is for anything other than the payment of money, may enforce obedience to it by injunction or other proper process. These provisions indicate that the intention of Congress is that the carrier shall have the right to fix its rates in the first place; that the Interstate Commerce Commission may, upon investigation, determine them to be unreasonable; and that the Circuit Court of the United States may then, either at law or in equity, enforce the orders of the Commission. In this way a uniform system can be maintained, and inconsistent rulings as to reasonableness between courts and the Commission, or between different courts, avoided.

The judge of the Circuit Court, however, following the decision of the majority of the Circuit Court of Appeals for the Ninth Circuit in Northern Pacific Ry. Co. v. Pacific Coast Line Manufacturers Association, 165 Fed. 1, 91 C. C. A. 39 (in which case the rate complained of had been filed and published, but had not gone into effect), held that the interstate commerce act did not impair the inherent equitable powers of the Circuit Court to prevent threatened injury. The conclusion was largely grounded upon a single sentence of Justice

McKenna in the case of Southern Ry. Co. v. Tift, 206 U. S. 428, 437, 27 Sup. Ct. 709, 711, 51 L. Ed. 1124:

"In the case at bar, however, there are assignments of error based on the objections to the jurisdiction of the Circuit Court. These might present serious questions, in view of our decision in Texas & Pacific Railroad Company v. Abilene Cotton Oil Company, 204 U. S. 426 [27 Sup. Ct. 350, 51 L. Ed. 553], upon a different record than that before us. We are not required to say, however, that because an action at law for damages to recover unreasonable rates, which have been exacted in accordance with the schedule of rates as filed, is forbidden by the interstate commerce act, a suit in equity is also forbidden to prevent a filing or enforcement of a schedule of unreasonable rates, or a change to unjust or unreasonable rates."

Mr. Justice White, in the subsequent case of Baltimore & Ohio R. R. Co. v. United States ex rel. Pitcairn Coal Co., 215 U. S. 481, 500, 30 Sup. Ct. 164, 171, 54 L. Ed. ——, explained this language of Mr. Justice McKenna:

"Nor is there anything in the contention that the decision in Southern Ry. Co. v. Tift, 206 U. S. 428 [27 Sup. Ct. 709, 51 L. Ed. 1124], qualifies the ruling in the Abilene Case, and is an authority supporting the right to resort to the courts in advance of action by the Commission for relief against unreasonable rates or unjust discriminatory practices, which, from their nature, primarily require action by the Commission. While it is true that the original bill in the Tift Case sought relief from alleged unreasonable rates before action by the Commission, yet, as said by this court (page 437 [206 U. S., page 711, 27 Sup. Ct., 51 L. Ed. 1124]): 'The Circuit Court granted no relief prejudicial to appellants on the original bill. It sent the parties to the Interstate Commerce Commission, where, upon sufficient pleadings, identical with those before the court, and upon testimony adduced upon the issues made, the decision was adverse to the appellants. This action of the Commission, with its findings and conclusions, was presented to the Circuit Court, and it was upon these, in effect, the decree of the court was rendered.' "

The dissenting opinion of Mr. Justice Harlan in Macon Grocery Co. v. Atlantic Coast Line R. R. Co., 215 U. S. 501, 30 Sup. Ct. 184, 54 L. Ed. ——, shows that he understood the law to be settled in the same way:

"The plaintiffs in error, citizens of Georgia, brought this suit in equity in the Circuit Court of the United States for the Southern District of Georgia against the defendants in error, corporations of several different states other than Georgia. The relief sought was a decree enjoining those corporations from putting in force and maintaining in Georgia certain rates established by agreement among themselves. It seems to me that this case could have been disposed of upon the authority of Baltimore & Ohio Railroad Co. v. Pitcairn Coal Company, recently decided, 215 U. S. 481 [30 Sup. Ct. 164, 54 L. Ed. ——], in which the court held in substance that shippers, who complain of rates adopted by interstate carriers, cannot obtain relief by an original suit brought in any court, federal or state, but must make application, at the outset, to the Interstate Commerce Commission. This, I think, is all that need have been said; for, whatever interpretation was given to the judiciary act of 1888 (Act Aug. 13, 1888, c. 866, 25 Stat. 433 [U. S. Comp. St. 1901, p. 508]), the Circuit Court would have been required, under the case just cited, to decline jurisdiction. But the court, in its wisdom, does not refer to this view of the case, and deems it necessary to determine whether the plaintiffs, citizens of Georgia, may, under the judiciary act of 1888, considered alone, invoke the jurisdiction of the Circuit Court, held in that state, against the defendant corporations of other states."

What we have said is consistent also with the views expressed by the Circuit Court of Appeals for the Fifth Circuit in the Macon

Grocery Co. Case, 166 Fed. 206, as well as with those of the Circuit Court for the Southern District of West Virginia in Columbus Iron & Steel Co. v. Kanawha Ry. Co., 171 Fed. 713, which we are informed has been affirmed by the Circuit Court of Appeals for the Fourth Circuit (178 Fed. 261).

The order is reversed, with directions to the court below to vacate the injunction and dismiss the bill without prejudice and with costs to the defendants.

NOYES, Circuit Judge (concurring). The primary purpose of the act to regulate commerce is the prevention of unjust discrimination by common carriers. The Interstate Commerce Commission exists as an instrumentality for the accomplishment of such purpose. But the power of the Commission under the act to afford relief is narrower than the rights guaranteed by the act. The act prohibits discriminatory rates and practices, but the Commission can only stop them after they have become effective and have, perhaps, done irreparable injury. A shipper, entitled under the act to freedom from discriminations, may yet be ruined by discriminations before the Commission can take action if the courts are powerless to intervene and grant some measure of injunctive relief.

In the present case the complainant shippers alleged that the defendant carrriers had entered into a combination for the purpose of making discriminatory rates which threatened irreparable injury. The Circuit Court granted an injunction preserving the existing situation until the Interstate Commerce Commission should have opportunity to act, and required security for the protection of the defendants.

Upon principle it would seem to me that the Circuit Court in affording this measure of relief was not encroaching upon the field of the Interstate Commerce Commission, but rather was acting as an aid of the Commission for the furtherance of the objects of the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]). If the question were an open one I should regard the existence of power in the courts to grant relief of this nature as consistent with, and as supplementing only, the authority conferred upon the Commission. In view, however, of the decision of the Supreme Court in Baltimore & Ohio R. R. Co. v. Pitcairn, 215 U. S. 481, 30 Sup. Ct. 164, 54 L. Ed. ——, I agree that this court is not at liberty to adopt the conclusion which would follow from these views. I am unable to follow the judge of the Circuit Court in the opinion that that decision is not controlling. I cannot interpret it in any other way than as broadly holding that shippers can never resort to the courts for relief in advance of action by the Interstate Commerce Commission. Perhaps the Supreme Court would make an exception to this rule—would say that it does not apply to mere provisional injunctions against threatened irreparable injury. But in view of the language of the opinion, I think that this court would not

be warranted in drawing such a distinction. Consequently I feel constrained to concur in the opinion that the Circuit Court had no jurisdiction to make the order appealed from and that it should be reversed.