## ATCHISON, T. & S. F. RY. CO. v. FOSTER LUMBER CO.

No. 787.   Opinion Filed May 9, 1911.

Rehearing Denied March 12, 1912.

(122 Pac. 139.)

1.   **COMMERCE—Regulation—Interstate Shipment—Judicial Supervision.**   A circuit court of the United States is without jurisdiction to enjoin the enforcement by a railroad company of an interstate rate, on the ground that it is unreasonable or discriminatory, in advance of action thereon by the Interstate Commerce Commission, which is vested by Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154], as amended by Act June 29, 1906, c. 3591, 34 Stat. 584 [U. S. Comp. St. Supp. 1909, p. 1149]), with exclusive jurisdiction to determine such question in the first instance.

2.   **CARRIERS—Carriage of Goods—Recovery of Possession.**   A void order of injunction purporting to annul a published and established higher rate and directing the maintenance of a lower rate for carriage of goods by an interstate transportation company will not authorize the consignee, on a refusal of a tender of the lower rate, to recover in replevin from such transportation company an interstate shipment of goods in its possession held by it for the payment of the established rate attempted to be superseded by such order.

(Syllabus by the Court.)

*Error from District Court, Noble County;*
*W. M. Bowles, Judge.*

Action by the Foster Lumber Company against the Atchison, Topeka & Santa Fe Railway Company.   Judgment for plaintiff, and defendant brings error.   Reversed and remanded with instructions.

*Robert Dunlap, Cottingham & Bledsoe,* and *George M. Green,* for plaintiff in error.

*L. B. Pope* and *P. W. Cress,* for defendant in error.

DUNN, J.   This action presents error from the district court of Noble county.   For the consideration thereof the court will assume the facts have been established in accordance with the·

contention of defendant in error, which was plaintiff in the lower court. Action was begun on the 1st day of June, 1908, by defendant in error as plaintiff against the plaintiff in error to recover in replevin a car of shingles in its possession at its station at Red Rock. The shingles involved had been shipped from Everett, Wash., on May 9, 1908, to Red Rock, Okla., over the lines of the Northern Pacific Railway Company to Billings, Mont., from that station to Concordia, Kan., over the Chicago, Burlington & Quincy Railway line, and from Concordia to Red Rock, over defendant's line. When the car arrived at its destination, the plaintiff offered to pay the freight on the same at the rate of 74½ cents per 100 pounds. The agent of the defendant company declined to accept the same and demanded 79½ cents per 100 pounds under the theory that the latter was the legal rate duly established according to law. Without going into detail, it may be stated that the controversy between them over the rate grew out of substantially the following facts: Prior to November 1, 1907, certain railway companies, among which were those named above with the exception of the defendant, had for such shipments an established rate of 74½ cents, but, desiring to put into force the higher rate and the one claimed by the agent of the defendant, duly published the same to take effect November 1, 1907. Prior to that date and in October, 1907, the lumber companies, claiming that the proposed rate was unreasonable and excessive, secured of the United States Circuit Court for the Western District of Washington, Northern Division, an injunction against the said rate, and it is the claim of plaintiff in this case that by virtue of said injunction the lower rate controlled and that the defendant was not justified in demanding the higher rate. The defendant claims that it was bound by the published rate of 79½ cents, and that to collect a lower rate would be in violation of the Interstate Commerce Law, for which, if knowingly done, it would be criminally liable. It is the claim of counsel for defendant that the court which granted the injunction was without jurisdiction of the subject-matter in that action, and that the decree rendered therein was void. As plaintiff must rely, to suc-

ceed, upon the validity of this decree, or at least upon the juris-
diction of the court to render it, and as a decision on that ques-
tion adversely to it would be conclusive of the case, we first ad-
dress ourselves thereto.

The proposition is one which has had the attention of a
number of the federal and state courts, and there is no little con-
flict of opinion; hence counsel for the respective parties are each
able to cite a respectable array of authorities to sustain their
various contentions.  It is needless to say, however, that the final
arbiter of this question is the Supreme Court of the United States,
and its conclusion thereon is one to which all other authority must
bow.  Counsel for plaintiff rely upon the authority of *Northern
Pacific R. Co. v. Pacific Coast Lumber Mfrs.' Ass'n et al.,* 165
Fed. 1, 91 C. C. A. 39, which appears to have been the identical
case in which the injunction was issued.  In that case the Circuit
Court of Appeals of the Ninth Circuit, predicated its opinion
upon its construction of the case of *Southern Railway Co. v. Tift,*
206 U. S. 428, 27 Sup. Ct. 709, 51 L. Ed. 1124, 11 Ann. Cas.
846, in which, distinguishing the case of *Texas & Pacific R. Co. v.
Abilene Cotton Oil Co.,* 204 U. S. 426, 27 Sup. Ct. 350, 51 L.
Ed. 553, 9 Ann. Cas. 1076, Justice McKenna, considering the
facts there involved, said:

"In the case at bar, however, there are assignments of error
based on the objections to the jurisdiction of the Circuit Court
These might present serious questions in view of our decisions
in *Texas & Pacific R. Co. v. Abilene Cotton Oil Co.,* 204 U. S.
426, 27 Sup. Ct. 350, 51 L. Ed. 553 [9 Ann. Cas. 1075], upon
a different record than that before us. We are not required to say,
however, that, because an action at law for damages to recover
unreasonable rates which have been exacted in accordance with
the schedule of rates as filed is forbidden by the Interstate Com-
merce Act, a suit in equity is also forbidden to prevent a filing or
enforcement of unreasonable rates or a change to unjust or un-
reasonable rates."

The force which this language of the court carried seems
to have received added vigor by the headnotes to the case (Tift
case), paragraph 1 (11 Ann. Cas. 846) of which reads as fol-
lows:

"Under the broad powers conferred upon the United States Circuit Court by section 16 of the federal Interstate Commerce Act (Act Feb. 4, 1887, as amended by Act March 2, 1889, c. 382, sec. 5, 25 Stat. L. 859, 3 Fed. Stat. Annot. 844 [U. S. Comp. St. 1901, p. 3167].), a circuit court sitting in equity has power to hear and determine a petition complaining of an advanced and excessive schedule of freight rates and to enjoin the maintenance of such schedule of rates, although an action at law to recover unreasonable rates exacted is forbidden by the Interstate Commerce Act."

The Tift case, decided in May, 1907, seems to have afforded the only apparent authority for the decisions of the inferior courts of the state and nation which have asserted jurisdiction to enjoin excessive rates proposed by interstate carriers. While the doctrine that jurisdiction existed has been accepted by some of the courts, it has not been without adverse declaration on the part of others, which, while their conclusions are no more final than those holding otherwise, yet as they are in the majority and accord with the ultimate expression of the Supreme Court of the United States, we do not deem it amiss to notice a few of them to have the benefit of some of the reasons given. For instance, the Circuit Court of Appeals of the Fifth Circuit, in the case of *Atlantic Coast Line R. Co. v. Macon Grocery Co. et al.,* 166 Fed. 206, 218, 92 C. C. A. 114, 126, Judge McCormick, after quoting from the Tift case, says:

"We are clear in our conviction that there is nothing in the Tift case to support the jurisdiction of the Circuit Court in entertaining the bill exhibited by the appellees in this case, and because we find nothing in the numerous decisions of the Supreme Court which we have examined to weaken the conviction we have expressed that the reasoning which is convincing and controlling against the entertaining of an action at law for damages occasioned by the enforcement of unreasonable rates which have been exacted in accordance with the schedule of rates as filed is forbidden by the Interstate Commerce Act, for a stronger reason, a suit in equity is also forbidden to prevent a filing or enforcement of a schedule of rates, or a change to unjust or unreasonable rates, it is also forbidden by the Interstate Commerce Act, because it would work an incalculably greater mischief."

This language from the Tift case was again quoted by District Judge Keller, in the case of *Columbus Iron & Steel Co. v. Kanawha & M. Ry. Co.* (C. C.) 171 Fed. 713, 722, and of it he said:

"In most of the opinions cited by plaintiff to sustain the jurisdiction contended for, this passage has been the basis of the court's holding that the jurisdiction existed; and, stripped of all connection with its context, the *dictum* might seem to give encouragement to the view that it favored the existence of the jurisdiction. But, when coupled with the context, this idea is no longer tenable."

This case was afterward affirmed by the Circuit Court of Appeals of the Fourth Circuit, 178 Fed. 261, 101 C. C. A. 621, wherein the conclusion reached by that court was stated in the syllabus as follows:

"A circuit court of the United States is without jurisdiction to enjoin the filing, publication, or enforcement by a railroad company of an interstate rate, on the ground that it is unreasonable or discriminatory, in advance of action thereon by the Interstate Commerce Commission which is vested by Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 279 [U. S. Comp. St. 1901, p. 3154], as amended by Act June 29, 1906, c. 3591, 34 Stat. 584 [U. S. Comp. St. Supp. 1909, p. 1149]), with exclusive jurisdiction to determine such questions in the first instance."

The Circuit Court of Appeals of the Second Circuit in the case of *Wickwire Steel Co. et al. v. New York Central & Hudson R. Co. et al.,* 181 Fed. 316, 319, 320, 104 C. C. A. 504, 507, decided June 14, 1910, speaking through Circuit Judge Ward, reviewed the provisions of the Interstate Commerce Law and the *Northern Pacific Ry. Co. v. Pacific Coast Line Mfrs.' Ass'n* case, *supra,* and the Tift case, *supra,* and said:

"Section 13 authorizes any person complaining to apply to the commission, which shall institute an investigation. Section 15 authorizes it to make an award of damages, and provides a method by which the Circuit Court of the United States may enforce the payment of the damages, or, if the order is for anything other than the payment of money, may enforce obedience to it by injunction or other proper process. These provisions indicate that the intention of Congress is that the carrier shall

have the right to fix its rates in the first place; that the Inter-state Commerce Commission may, upon investigation, determine them to be unreasonable; and that the Circuit Court of the United States may then, either at law or in equity, enforce the orders of the commission. In this way a uniform system can be maintained, and inconsistent rulings as to reasonableness between courts and the commission, or between different courts, avoided. The judge of the Circuit Court, however, following the decision of the majority of the Circuit Court of Appeals for the Ninth Circuit in *Northern Pac. Ry. Co. v. Pac. Coast Line Manufacturers' Asso-ciation,* 165 Fed. 1, 91 C. C. A. 39 (in which case the rate com-plained of had been filed and published, but had not gone into effect), held that the interstate commerce act did not impair the inherent equitable powers of the Circuit Court to prevent threat-ened injury. The conclusion was largely grounded upon a single sentence of Justice McKenna in the case of *Southern Ry. Co. v. Tift,* 206 U. S. 428, 437, 27 Sup. Ct. 709, 51 L. Ed. 1124 [11 Ann. Cas. 846]."

Here follows the language of the Tift case to which reference has been made. Continuing, Judge Ward says:

"Mr. Justice White, in the subsequent case of *Baltimore & Ohio R. Co. v. United States ex rel. Pitcairn Coal Co.,* 215 U. S. 481, 500, 30 Sup. Ct. 164, 171, 54 L. Ed. 292, 299, ex-plained this language of Mr. Justice McKenna: 'Nor is there anything in the contention that the decision in *Southern Ry. Co. v. Tift,* 206 U. S. 428, 27 Sup. Ct. 709, 51 L. Ed. 1124 [11 Ann. Cas. 846], qualified the ruling in the Abilene case, and is an authority supporting the right against unreasonable rates or unjust discriminatory practices, which, from their nature, pri-marily require action by the commission.' While it is true that the original bill in the Tift case sought relief from alleged un-reasonable rates before action by the commission, yet, as said by this court (page 437 of 206 U. S., page 711 of 27 Sup. Ct., 51 L. Ed. 1124 [11 Ann. Cas. 846]): 'The Circuit Court granted no relief prejudicial to appellants on the original bill. It sent the parties to the Interstate Commerce Commission, where, upon sufficient pleadings, identical with those before the court, and, upon whose testimony adduced upon the issues made, the de-cision was adverse to the appellants. This action of the com-mission, with its findings and conclusions, was presented to the Circuit Court, and it was upon these, in effect, the decree of the court was rendered.' The dissenting opinion of Mr. Justice Harlan in *Macon Grocery Co. v. Atlantic Coast Line R. R. Co.,*

215 U. S. 501, 30 Sup. Ct. 184, 54 L. Ed. 300, shows that he understood the law to be settled in the same way: 'The plaintiffs in error, citizens of Georgia, brought this suit in equity in the Circuit Court of the United States for the Southern District of Georgia against the defendants in error, corporations of several different states other than Georgia. The relief sought was a decree enjoining those corporations from putting in force and maintaining in Georgia certain rates established by agreement among themselves. It seems to me that this case could have been disposed of upon the authority of *Baltimore & Ohio R. Co. v. Pitcairn Coal Co.*, recently decided, 215 U. S. 481, 30 Sup. Ct. 164, 54 L. Ed. 292, in which the court held in substance that shippers, who complain of rates adopted by interstate carriers, cannot obtain relief by an original suit brought in any court, federal or state, but must make application, at the outset, to the Interstate Commerce Commission. This, I think, is all that need have been said; for, whatever interpretation was given to the judiciary act of 1888 (Act Aug. 13, 1888, c. 866, 25 Stat. 433 [U. S. Comp. St. 1901, p. 508]), the Circuit Court would have been required, under the case just cited, to decline jurisdiction. But the court, in its wisdom, does not refer to this view of the case, and deems it necessary to determine whether the plaintiffs, citizens of Georgia, may, under the judiciary act of 1888, considered alone, invoke the jurisdiction of the Circuit Court, held in that state, against the defendant corporations of other states.' ''

The conclusion reached in the cases above noted finds further support in the case of *United States v. New York Central & Hudson River R. Co.,* 212 U. S. 509, 29 Sup. Ct. 313, 53 L. Ed. 629. See, also, *Thacker Coal & Coke Co. v. Norfolk & Western Ry. Co.,* 67 W. Va. 448, 68 S. E. 107, 28 L. R. A. (N. S.) 108, the best considered state case we have seen, wherein jurisdiction is denied and a great number of the federal decisions are noted and reviewed.

Speaking of the effect of the allowance of the jurisdiction contended for by counsel for plaintiff in this case, Justice White, speaking for the Supreme Court of the United States in the case of *Baltimore & Ohio Ry. Co. v. United States ex rel. Pitcairn Coal Co. et. al., supra,* in part says:

"In considering section 4 in the case of *Illinois C. R. Co. v. Interstate Commerce Commission,* just decided, it was pointed

out that the effect of the section was to cause it to come to pass that courts, in determining whether an order of the commission should be suspended or enjoined, were without power to invade the administrative functions vested in the commission, and therefore could not set aside an order duly made on a mere exercise of judgment as to its wisdom or expediency. Under these circumstances it is apparent, as we have said, that these amendments add to the cogency of the reasoning which led to the conclusion in the Abilene case that the primary interference of the courts with the administrative functions of the commission was wholly incompatible with the act to regulate commerce. This result is easily illustrated. A particular regulation of a carrier engaged in interstate commerce is assailed in the courts as unjustly preferential and discriminatory. Upon the facts found, the complaint is declared to be well founded. The administrative powers of the commission are invoked concerning a regulation of like character upon a similar complaint. The commission finds, from the evidence before it, that the regulation is not unjustly discriminatory. Which would prevail? If both, then discrimination and preference would result from the very prevalence of the two methods of procedure. If, on the contrary, the commission was bound to follow the previous action of the courts, then it is apparent that its power to perform its administrative functions would be curtailed, if not destroyed. On the other hand, if the action of the commission were to prevail, then the function exercised by the court would not have been judicial in character, since its final conclusion would be susceptible of being set aside by the action of a mere administrative body. That these illustrations are not imaginary is established not only by this record, but by the record in the case of *Illinois C. R. Co. v. Interstate Commerce Commission,* 215 U. S. 452 [30 Sup. Ct. 155] 54 L. Ed. 280."

These decisions of the United States Supreme Court must be held to determine the question for all. Those which limited the force of the language of the Tift case had not been promulgated when this case was filed and tried, hence counsel and the lower court did not enjoy the light which we have had in reaching the conclusion here found. That it was competent to inquire into the jurisdiction of the court issuing the injunction, see *Southern Pine Lumber Co. v. Ward,* 16 Okla. 131, 85 Pac. 459; *Elliott v. Piersol,* 1 Pet. (26 U. S.) 340, 7 L. Ed. 164.

It therefore follows that the judgment therein is reversed, and the cause remanded to the lower court, with instructions to set the same aside and enter one in accordance with this opinion.

All the Justices concur.